David Robert FISHER and Janice
Hanson Fisher, Plaintiffs,

v.

UNITED STATES of America,
Defendant.

No. 97–CV–73218–DT.

United States District Court,
E.D. Michigan,
Southern Division.

March 31, 1999.

John H. Dudley, Jr., Butzel Long, Detroit, MI, for plaintiffs.

Christine A. Grant, David A. Haimes, U.S. Dept. of Justice, Washington, DC, for defendant.

## OPINION AND ORDER REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

ROSEN, District Judge.

### I.  INTRODUCTION

Plaintiffs Robert and Janice Fisher, husband and wife, filed this action on July 2, 1997 to recover federal income tax and interest which they claim was erroneously and illegally assessed and collected by the Internal Revenue Service for the years 1985 through 1996.  This matter is presently before the Court on the Government's Motion for Summary Judgment. Plaintiffs have responded to the Government's Motion to which response the Government has replied.  Also, as directed by the Court at the close of the hearing held on November 5, 1998, Plaintiffs have filed a Supplemental Brief and both Plaintiffs and the Government have filed supplemental evidence in support of their respective positions.[1]

---

1.  At the close of the November 5, 1998 hearing, the Court ordered discovery to be reopened and directed the parties to take the depositions of IRS employees Mary Lawson and Ramona Hall (who at the time of the hearing had not yet been identified) in connection with their involvement with several documents relied upon by the Plaintiffs in support of their claimed entitlement to a federal income tax refund.  The parties were further directed to submit to the Court transcripts of the depositions and to file Supplemental Briefs after the depositions were completed.

On February 24, 1999, Plaintiffs filed their Supplemental Brief along with a copy of the transcript of Ms. Lawson's deposition (and her deposition "errata" sheet).  The Government did not file a Supplemental Brief but did

Having reviewed and considered the parties' respective briefs and supporting documents and having heard the oral arguments of counsel, the Court is now prepared to rule on this matter. This Opinion and Order sets forth the Court's ruling.

## II. BACKGROUND

Plaintiffs' claim of entitlement to a tax refund is based upon a series of alleged overpayments of taxes beginning in December 1985 which they claim should have been carried forward to each succeeding year. The IRS contends that Plaintiffs are not entitled to the refund of taxes they seek because any payments of taxes in excess of those which were applied to tax liability for the year, were paid by credit to the succeeding year and, thus, lost their character as overpayments, or were not claimed on a timely filed claim for refund. The Government claims that Plaintiffs have no overpayments for the years 1985, 1988 through 1994, and 1996. With respect to the years 1986 and 1987, the Government claims that Plaintiffs failed to file timely claims for refund.[2]

### A. HOW THE IRS TREATS OVER-PAYMENTS OF INCOME TAXES

■ When a taxpayer files an income tax return, rather than obtaining a refund of overpayment, he may indicate on the return that all or part of the overpayment

shown on the return is to be applied to his estimated tax liability for the following year.[3] Such an indication constitutes an election to so apply the overpayment and, once indicated, the election is irrevocable. Treas.Reg. § 310.6402–3(a)(5); 26 U.S.C. § 6513(d); *Georges v. U.S. Internal Revenue Service*, 916 F.2d 1520, 1521 (11th Cir.1990). At that point, the amounts lose their character as overpayments for the years in which they arose and become tax payments for the succeeding year. *Georges v. Internal Revenue Service, supra.*

## III. PERTINENT FACTS

In support of their Motion for Summary Judgment, the Government relies principally upon "Certificates of Assessments and Payments" issued by the Director of the IRS Cincinnati Service Center with respect to the Fishers' IRS account for the years 1985 through 1996. [See Government's Exhibits A–L.] The evidence presented in this case shows as follows:

### 1985 TAX YEAR

■ The Certificate of Assessments and Payments for 1985 [Government Ex. A] shows that Plaintiffs obtained an extension to file their 1985 tax return until April 15, 1987. However, they failed to timely file that return. According to the Certificate, it was not until May 16, 1987 that their 1985 return was filed.[4]

submit the transcript of the deposition of Ramona Hall along with another copy of Mary Lawson's deposition transcript on March 3, 1999.

2. With respect to 1995, the IRS concedes that Plaintiffs are entitled to a refund for that one year in the amount of $1,552.52, plus interest.

3. Interest does not accrue on the payment to be applied to the succeeding year's tax liability. Treas.Reg. § 301.6402–3(a)(5).

4. Mrs. Fisher testified in her deposition that it was her husband's responsibility to prepare and file their income tax returns. [Janice Fisher Dep., Gov't Ex. CC, pp. 7–9.] Mr. Fisher testified in his deposition that he "assumed" he filed every return from 1952 through 1996, "the day or the day after" the date he indicated on the signature line, by

placing the return in a mailbox, First Class postage prepaid. [David Fisher Dep., Gov't Ex. DD, pp. 62, 65–7.] The Fishers do not dispute that they obtained an extension to file their 1985 return in 1987 instead of 1986. However, the Court notes that the date indicated by Mr. Fisher on the signature line of the Fishers' copy of their return is 4/15/**86**. [See Plaintiffs' Ex. 6.] This tends to discredit Mr. Fisher's "assumption" that he filed every return either the day or the day after the date indicated on the signature line. Furthermore, there is nothing on the face of the Fishers' own copy of the 1985 return (Plaintiff's Exhibit 6) to affirmatively establish when it was, in fact, "filed" and Plaintiff's have produced no direct evidence to establish that fact.

When a return is mailed to the IRS, it is deemed timely filed if it is postmarked on or

On June 22, 1987, the IRS assessed tax, based on the return, in the amount of $6,331.25. Plaintiffs were given a credit for withheld tax in the amount of $5,898.88 and a credit for overpayment from 1984 in the amount of $22,458.07. Plaintiffs elected to credit the excess to their 1986 estimated tax liability. The Certificate for 1985 shows a credit payment of $22,020.70 to be applied to 1986.[5]

### 1986 TAX YEAR

The Certificate of Assessments and Payments for 1986 [Government Ex. B] shows that the IRS has no record of the Fishers' having filed a return for 1986. Notices of failure to file were sent to Plaintiffs in October 1989 and February 1990 [See Government Ex. O-1, and O-2], but since Plaintiffs had elected to credit their 1985 excess to 1986, when no return was forthcoming, the IRS activated that credit and credited $22,020.70 as payment for 1986 taxes. The Government contends that Plaintiffs never filed a 1986 return, did not file a timely claim for refund, and did not comply with the statute of limitations for seeking a claim for credit or refund of overpayment. Therefore, the payment of $22,020.70 was sent to the IRS's general fund.[6]

Plaintiffs, however, dispute their alleged failure to file a return for 1986. In support of their position, Plaintiffs rely upon a "Document Transmittal" cover sheet dated January 14, 1998, transmitting copies of Plaintiffs' returns from the Director of Refund Litigation's Office at the IRS Service Center in Covington, Kentucky to the IRS District Counsel in Detroit for use in this action. The Litigation Coordinator who transmitted the files, Mary Lawson, noted on the Transmittal Sheet which copies of Plaintiffs' returns were being forwarded to Detroit. However, she noted on that sheet that: *"The Returns for 8512 & 8612*[7] *were filed joint and have been destroyed."* [Plaintiffs' Ex. 2 (emphasis added).] Plaintiffs deem Ms. Lawson's statement to be an admission by the Government their

---

before the due date of the return *and* received by the IRS after the due date (the "delivery *and* receipt rule"), or, if the taxpayer sends the return by registered or certified mail, the date of registration is deemed the postmark date, and is prima facie proof that the return was delivered to the IRS. *See,* 26 U.S.C. § 7502. It is only if the taxpayer sends his return by registered or certified mail that he may introduce circumstantial evidence (such as deposition testimony) to establish timely filing. *See Surowka v. United States,* 909 F.2d 148, 149–150 (6th Cir.1990).

5. On their copy of the 1985 return, Plaintiffs indicated that the amount carried over as a credit from 1984 was $38,241.92, (as opposed to the $22,458.07 indicated on the IRS Certificate) rendering an overpayment of $37,-804.55 (instead of the $22,020.70 indicated by the IRS). [See Plaintiffs' Ex. 6.] This discrepancy amounts to a difference of $15,783.85. The discrepancy was noted by IRS appeals officer, Ramona Hall, whose deposition was taken in connection with this action. As Ms. Hall noted on her 1996 work notes which she made while handling the Fishers' administrative appeal of the audit of their 1987 and 1988 tax returns—which she authenticated in her deposition—the discrepancy between the amounts carried over and credited remained,

as of June 1996, "not explained," [see document no. 0337 attached to Hall deposition exhibit D-1], and the IRS's records of the Fishers' 1985 return have been destroyed.

There is no discrepancy, however, with respect to Plaintiffs' election to credit their excess 1985 payment to their 1986 estimated tax liability.

6. Plaintiffs claim they did file a 1986 return, albeit a month late, on May 15, 1987. (The Court notes that May 15, 1987 is the undisputed date on which Plaintiff's filed their 1985 return.) The Fishers have provided the Court with a copy of a 1986 return, but as noted in footnote 4 above, this is merely the Plaintiffs' own copy of the 1986 return, and there is nothing thereon to indicate when, if ever, it was "filed". According to their copy of the return, Plaintiffs claimed a tax liability for 1986 of $4,061.00, a credit of $8,663.89 for taxes withheld, and a carry-over credit from 1985 of $38,761.34. Rather than claiming a refund, Plaintiffs elected to have their overpayment of taxes carried over and credited to 1987.

7. In IRS parlance, instead of denoting tax years by calendar year, such as 1985 or 1986, tax years are denoted as 8512 and 8612.

1986 return was filed.[8] In reply, the Government submitted an Affidavit from Ms. Lawson in which she said that she made a mistake when she noted on the transmittal sheet that the Fishers' 1985 *and* 1986 returns had been filed but had already been destroyed; that actually only the 1985 return had been filed and destroyed. No return had been filed for 1986.

At the November 5, 1998 hearing, the Court directed the parties to take Ms. Lawson's deposition and to then submit to it a copy of the transcript. The parties' complied with the Court's directive and on February 24 and March 3, 1999, submitted to the Court copies of Ms. Lawson's deposition transcript, along with copies of her post-deposition "errata sheets", noting her changes/corrections to the transcript.

At her deposition, Mary Lawson, who is employed with the IRS in Florence, Kentucky, testified that she was asked in December 1997 to locate, assemble and then transmit to the IRS office in Detroit the Fishers' tax returns for 1985 through 1996. She testified that in performing this task, she found that the Fishers' 1985 return had been filed but that it had already been destroyed. With respect to 1986, however, her research showed that no return had ever been filed. Ms. Lawson explained that she reached this conclusion by looking at the "Master File Transcript" ("MFTRA") of the Fishers' tax return history. She explained that when a "150" transaction code appears on the Master File Transcript for a given year, that means that a return had been filed. She testified that there was no "150" code on

the Master File Transcript for either of the Fishers for 1986. [Lawson Dep. p. 14.]

That Ms. Lawson had concluded that no return was filed for 1986 is further supported by notes she made on a printout of the Fishers' Master File Transcript which she authenticated at her deposition. [See Government Ex. 1.] On that printout along side the printout heading, "Tax Period 8612", Ms. Lawson hand wrote, "didn't file" while she was searching for the Fishers' tax returns from 1985 through 1996 as requested by the Detroit IRS office. [Lawson Dep. p. 28.] She also noted on the same printout "destroyed" along side the printout entry: "041586 22,020.70–8723 17211–136–38109–7". She testified that her notation meant only that the DLN (document location number) reserved for the Fishers' 1986 return (17211–136–38109–7) had been destroyed, not that the return was destroyed. *Id.*

Ms. Lawson also indicated in personal log notes that she made during her search for the Fishers' tax records that no return was filed for 1986. In her notes [Government Ex. 2], Ms. Lawson noted on January 12, 1998 that there was "no return for 86". [Lawson Dep. pp. 39–40]. She also noted "85 destroyed", which she testified meant that the Fishers' 1985 tax return had been destroyed. *Id.*

Ms. Lawson also kept a chart with a running tally of each of the year's returns that she was searching for and indicated with a check mark those years for which she located a filed return. [See Government Ex. 2.] Her chart indicates that returns were found for all years after 1987 through 1986. Along side "86", however,

---

**8.** Plaintiffs also rely on their Exhibit 3 which is a copy of some notes made by an unidentified IRS employee (who since the November 5, 1998 hearing has been identified as Ramona Hall) while reviewing Plaintiffs' IRS file in 1996 in connection with the Fishers' administrative proceeding concerning their claim for a tax refund. Those notes state as follows:
On 4/15/86 TP [taxpayers] had a credit trans of 22,020.70 which went into IRS General Fund because?
—not sure why—

—credit transfer should have been refunded since 86 ret was not filed & could not be applied—Right?
It appears they put credit transfer to general fund before SOL expired
Need to check w/collections/APS person
(Plaintiff omits this last notation that the writer needed to check with someone apparently regarding the accuracy of her reading of the file in arguing that the IRS jumped the gun in transferring their 1986 credit balance to the general fund.)

Ms. Lawson noted "DNF", which she testified meant "document not filed". [Lawson Dep. p. 41.] (Along side "85" she noted "D" which she testified meant that the return for 1985 had been destroyed.) *Id.*[9] Ms. Lawson made the above notes on January 12, 1998, two days before she sent the records with the transmittal cover sheet with the "mistaken" notation that the returns for 1985 *and* 1986 were filed joint but had been destroyed. [Lawson Dep. p. 41.]

Ms. Lawson also kept an index card file of each refund litigation request that she was asked to handle. On the index card she filled out for the Fisher request, she made the following notations:

12–10–97   rec'd call

**1–14   sent returns to Rob; 85–dest. 86 didn't file**

1–20   sent out 4340s [10]

[Government Ex. 3 (emphasis added). See also, Lawson Dep. pp. 41–42.]

Ms. Lawson testified that she made the January 14, 1998 notation on Government Exhibit 3 *before* she prepared the transmittal letter with mistaken notation.

When asked how it was that in light of all of the notes she made while conducting her search she came to write on the transmittal cover sheet [Government Ex. 4] that "the periods 8512 & 8612 have been destroyed," Ms. Lawson testified that she believed that she prepared the transmittal sheet after she had all the DLNs (document location numbers) written down so that the documents would be ready for retrieval. [See Lawson Dep. p. 43] In listing the pertinent DLNs for the tax

years requested, she said she worked from the MFTRA printouts for each year. *Id.* She believes that when she had the printout for 1986 in front of her, she had simply carelessly forgotten that her notation "destroyed" along side the 4/15/86 date and the 17211 DLN meant only that the DLN had been destroyed. *Id.*

IRS appeals officer, Ramona Hall, also testified in her deposition that in her separate review of the Fishers' file in connection with their administrative appeal of the disallowance of their claims for refunds for 1987 and 1988, she looked at returns filed for years both prior to and after the years in dispute, as she always does in conducting her appeals reviews, and that a review of 1986 was particularly important with respect to the Fishers because they were claiming on their 1987 return that they had a carry-over overpayment from 1986. She testified that the Fishers had a "history of late or no filing at all" and that although there was a credit [i.e., overpayment carry-over] transfer to 1986 from previous years, "it didn't affect '87 or '88 *because no returns were filed for '86.*" [Hall dep. pp. 48.]

*1987 TAX YEAR*

The Government contends that Plaintiffs did not timely file a return for 1987. [See Government Ex. C.] The IRS issued a number of notices to Plaintiffs stating that it had no record of a 1987 return. Not having received a return, on January 3, 1991, the IRS prepared a substitute return. The IRS received Plaintiffs' return on June 7, 1991.[11] The IRS then proceeded to assess taxes based on Plaintiffs' re-

---

**9.** Both of the notations "85—destroyed—no return for 86" appear on one line of Ms. Lawson's notes. This notation is followed by the notation "joint". She testified that the "joint" notation meant only that both Mr. and Mrs. Fisher's names appeared on the same screen of the IDRS ("Integrated Data Retrieval System") terminal, not that a 1986 return had been filed joint. [Lawson Dep. p. 40.]

**10.** "4340s" is IRS shorthand for Certificates of Assessments and Payments.

**11.** The Court notes that on the signature line, Plaintiffs dated the return 4/10/88 and re-signed by them, according to Mr. Fisher's notation "per the request of the IRS", on June 3, 1991. (This date does not make sense in light of the IRS's stamping of "postmark June 4, 1991" and "received June 7, 1991.") The Court further notes that the dates stamped "received" on Plaintiffs' 1988 return are the same as the 1987 return.

turn which showed a tax liability for 1987 of $6,487.00 and a withholding tax credit of $8,275.50, amounting to an overpayment of taxes for 1987 of $1,787.50. The IRS treated Plaintiff's late filed 1987 return as a claim for refund for 1987, but because the 1987 withholding taxes were deemed paid on April 15, 1988 (the due date for filing 1987 taxes), the June 7, 1991 filing of their return was beyond the period of limitations for claiming a refund. Therefore, the IRS disallowed Plaintiffs' claim and the $1,787.50 overpayment was transferred to the IRS general fund.[12]

### 1988 TAX YEAR

According to the Certificate of Assessments and Payments for 1988 [Government Ex. D], Plaintiffs again were late filing their 1988 return. Although returns were due to be filed by April 15, 1989, Plaintiffs did not file their return until June 7, 1991. The IRS assessed tax based upon the late-filed return, assessing tax liability for that year as $3,608 with a withholding credit of $6,033.39. The 1988 return although two years late, having been filed within the three year period of limitations for filing a claim for refund, Plaintiffs overpayment of $2,425.39 was credited to 1989 as they elected.

### 1989 TAX YEAR

The Certificate of Assessments and Payments for 1989 [Government Ex. E] indicates that Plaintiffs filed an untimely return on January 2, 1992. The IRS assessed a tax in accordance with that return in the amount of $3,374.89 and gave a credit for withholding taxes of $7,106.65, which left an overpayment of $3,731.76 for 1989. In accordance with Plaintiffs' election, the IRS applied the overpayment to 1990. In addition, Plaintiffs' overpayment from 1988 was carried over to 1990.

**12.** Plaintiffs' late filed return [Gov't Ex. U] indicates that Plaintiffs believed they had no tax liability at all for 1987 and that they were, therefore, entitled to an overpayment credit for the full amount of their withholding taxes paid that year. The return further indicates

### 1990 TAX YEAR

The IRS records [Government Ex. F] indicate that Plaintiffs filed an untimely 1990 return on November 9, 1992. In accordance with that return, the IRS assessed a tax of $7,598.54 and made a credit of withholding taxes of $9,839.37, leaving an overpayment for 1990 of $2,240.83. Although Plaintiffs elected to credit the overpayment to 1991, the IRS issued Plaintiffs a refund check in the amount of $8,402.98, i.e., the sum of the three years of overpayments accrued as of that date.

### 1991 TAX YEAR

The Certificate of Assessments and Payments for 1991 [Government Ex. G] indicates that Plaintiffs filed an untimely 1991 return on April 24, 1992. Tax was assessed in the amount of $7,216, with a credit for withholding taxes in the amount of $11,227.48. The $4,011.48 overpayment, pursuant to Plaintiffs' election, was credited to 1992.

### 1992 TAX YEAR

According to the Certificate of Assessments and Payments for 1992 [Government Ex. H], Plaintiffs' 1992 tax return was timely filed. Based on the return, tax liability was assessed as $8,565. Plaintiffs were credited for withholding taxes of $10,356.35. Pursuant to Plaintiffs' election, the overpayment of $1,791.35 was credited to 1993 along with the overpayment of $4,011.48 from 1991.

### 1993 TAX YEAR

Plaintiffs' 1993 return was also timely filed. [See Government Ex. I.] Tax was assessed as $9,668 and withholding taxes were credited in the amount of $11,629.53. The overpayment of $1,961.53 plus the carry-over of $5,802.83 from the two previous years was credited in accordance with Plaintiffs' election to 1994.

that Plaintiffs were still acting under the belief that they were entitled to a carry-over of the previous years' tax overpayments amounting to $43,364.23 for a total carry-over credit of $50,340.68.)

*1994 TAX YEAR*

The Certificate of Assessments and Payments for 1994 [Government Ex. J] indicates that Plaintiffs did not timely file their return for 1994. Plaintiffs' return was filed on March 28, 1997. Taxes were assessed in the amount* of $26,564.14,[13] against which Plaintiffs were credited for withholding taxes in the amount of $11,929.63. In addition, the IRS assessed a failure to pay penalty, a delinquency penalty, and interest, but then abated most of the delinquency penalty, most of the interest and $5,290.89 of tax (ultimately yielding a tax liability of $21,273.25, i.e., the same amount that Plaintiffs had calculated, see note 14, *supra*). After application of the overpayment of $7,764.36 from prior years, the withheld tax credit of $11,929.63, and a payment of $4,000, Plaintiffs were entitled to refund of $2,138.53, which was paid to Plaintiffs. [See Ex. N.]

*1995 TAX YEAR*

As indicated above, the IRS concedes that it owes Plaintiffs a refund or credit in the amount of $1,552.52 for 1995. [See Government Ex. K.]

*1996 TAX YEAR*

The Certificate of Assessments and Payments for 1996 [Government Ex. L] indicates that Plaintiffs timely filed their 1996 return on April 15, 1997. In accordance with that return, tax was assessed at $14,011.13. The IRS credited Plaintiffs for withheld taxes in the amount of $13,751.60. Plaintiff paid their deficiency bringing their IRS account balance to zero.

## III. *ISSUES PRESENTED*

The foregoing facts establish that the following matters are at issue:

1) Whether Plaintiffs are entitled to a carry-over credit on their 1985 taxes (and

---

13. Plaintiffs calculation of their tax liability for 1994 was $21,273.25. [See Plaintiffs' Ex. 6]

14. "Taken together the three cases signal to the lower courts that summary judgment can

years forward) from 1984 of $38,241.92, (as opposed to the $22,458.07 indicated on the IRS Certificate for 1985) rendering an overpayment of $37,804.55 (instead of the $22,020.70 indicated by the IRS). This discrepancy amounts to a difference of $15,783.85.

2) Whether the IRS properly deemed forfeited the amount of carry-over credited from 1985 to 1986, due to Plaintiffs' alleged failure to file a 1986 return.

3) Whether the IRS properly deemed forfeited the overpayment of taxes for 1987 of $1,787.50 due to Plaintiffs' alleged failure to file a return claiming a refund/credit within the statutory period of limitations.

## IV. *DISCUSSION*

### A. *STANDARDS APPLICABLE TO MOTIONS FOR SUMMARY JUDGMENT*

Summary judgment is proper " 'if the pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' " Fed. R.Civ.P. 56(c).

Three 1986 Supreme Court cases—*Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); and *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)—ushered in a "new era" in the standards of review for a summary judgment motion. These cases, in the aggregate, lowered the movant's burden on a summary judgment motion.[14] According to the *Celotex* Court,

be relied upon more so than in the past to weed out frivolous lawsuits and avoid wasteful trials." 10A Charles A. Wright, Arthur R. Miller, Mary Kay Kane, *Federal Practice & Procedure*, § 2727, at 35 (1996 Supp.).

In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof.

*Celotex,* 477 U.S. at 322, 106 S.Ct. 2548.

■ After reviewing the above trilogy, the Sixth Circuit established a series of principles to be applied to motions for summary judgment. They are summarized as follows:

* Cases involving state of mind issues are not necessarily inappropriate for summary judgment.

* The movant must meet the initial burden of showing "the absence of a genuine issue of material fact" as to an essential element of the non-movant's case. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.

* The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment."

* The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

* The trial court has more discretion than in the "old era" in evaluating the respondent's evidence. The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is plausible.

*Betkerur v. Aultman Hospital Association,* 78 F.3d 1079, 1087 (6th Cir.1996). *See also, Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479–80 (6th Cir.1989). The Court will apply the foregoing standards in deciding Defendant's Motion for Summary Judgment in this case.

## B. *PERTINENT STATUTORY PROVISIONS*

Section 6511 of the Internal Revenue Code sets forth the statutory provisions governing the issue of timeliness of filing income tax returns in which the taxpayer claims entitlement to a refund or credit for overpayment of taxes. This section provides, in pertinent part, as follows:

26 U.S.C. § 6511(a) provides:

**(a) Period of limitations on filing claim.**—Claim for credit or refund of an overpayment of any tax imposed by this title in respect of which tax the taxpayer is required to file a return shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later, or if no return was filed by the taxpayer, within 2 years from the time the tax was paid. . . .

**(b) Limitation on allowance of credits or refunds.**

**(1) Filing of claim within prescribed period.**—No credit or refund shall be allowed or made after the expiration of the period of limitation prescribed in subsection (a) for the filing of a claim for credit or refund, unless a claim for credit or refund is filed by the taxpayer within such period.

**(2) Limit on amount of credit or refund.**—

**(A) Limit where claim filed within 3–year period.**—If the claim was filed by the taxpayer during the 3–year period prescribed in subsection (a), the amount of the credit or refund shall not exceed the portion of the tax paid within the period, immediately

preceding the filing of the claim, equal to 3 years plus the period of any extension of time for filing the return....

**(B) Limit where claim not filed within 3–year period.**—If the claim was not filed within such 3–year period, the amount of the credit or refund shall not exceed the portion of the tax paid during the 2 years immediately preceding the filing of the claim....

26 U.S.C. § 6511.

For purposes of determining when taxes are paid under Section 6511, withheld income taxes are deemed paid on April 15 of the year following the tax year. *See,* 26 U.S.C. § 6513(b).

▮ Thus, pursuant to 26 U.S.C. § 6511 and 6513, to be entitled to a refund or credit for the amount of claimed of overpaid federal income tax on a federal income tax return in a given year, the return must be filed within 3 years of April 15 of the year following the tax year.

Late filed returns, nonetheless, may be treated as a claim for refund for purposes of 26 U.S.C. § 6511. *See,* 26 C.F.R. § 301.6402–3(a). However, when a return is filed late (i.e., more than 3 years after April 15 of the year following the tax year), the amount of the taxpayer's refund is limited by Section 6511(b)(2)(A), which states that the amount of the refund or credit "shall not exceed the portion of the tax paid during the period of three years immediately preceding the date the claim for refund was filed." Thus, since withheld taxes are deemed paid on April 15 following the tax year, *see* 26 U.S.C. § 6513(b)(1), generally a return filed more than three years late will result in the taxpayer losing any entitlement to a refund or credit.

## C. *IRS CERTIFICATES OF ASSESSMENTS*

As indicated above, in support of its Motion for Summary Judgment, the Gov-

ernment relies principally upon "Certificates of Assessments and Payments" issued by the Director of the IRS Cincinnati Service Center with respect to the Fishers' IRS account for the years 1985 through 1996. [*See* Government's Exhibits A–L.]

▮ IRS Certificates of Assessments and Payments are presumed correct, and are *prima facie* evidence of the adequacy and propriety of IRS deficiency notices and tax assessments. *See, United States v. Janis,* 428 U.S. 433, 440–41, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976); *Sinder v. United States,* 655 F.2d 729, 731 (6th Cir. 1981); *United States v. Chila,* 871 F.2d 1015, 1018 (11th Cir.1989), *cert. denied,* 493 U.S. 975, 110 S.Ct. 498, 107 L.Ed.2d 501 (1989). However, the presumption of correctness of a Certificate of Assessments and Payments is a rebuttable presumption. *Sinder, supra.*

▮ In order to overcome the presumption, the taxpayer bears the burden of proving by a preponderance of the evidence, that, in fact, the assessment is incorrect. *United States v. Red Stripe, Inc.,* 792 F.Supp. 1338, 1341 (E.D.N.Y.1992); *United States v. Dixon,* 672 F.Supp. 503, 506 (M.D.Ala.1987).[15] If the taxpayer fails to meet his burden of presenting sufficient evidence showing the assessments to be incorrect, summary judgment in favor of the Government is appropriate upon submission of the Certificates of Assessments and Payments. *Adams v. United States,* 175 Ct.Cl. 288, 358 F.2d 986, 994 (1966); *United States v. Janis, supra.*

## D. *THE GOVERNMENT IS ENTITLED TO SUMMARY JUDGMENT ON THE ISSUE OF THE AMOUNT OF CARRY–OVER CREDIT TO WHICH PLAINTIFFS WERE ENTITLED AS OF 1985.*

▮ The Government has framed this action as arising out of Plaintiffs' tax re-

---

**15.** In *United States v. Mathewson,* 839 F.Supp. 858, 860 (S.D.Fla.1993), the court stated that taxpayer's burden was to establish

incorrectness by clear and convincing evidence.

turns for the years 1985 through 1996. However, as indicated above, the evidence presented by Plaintiff indicates that the genesis of Plaintiffs' dispute with the IRS must have actually begun in 1984. On Plaintiffs' copy of their 1985 return, Plaintiffs indicated that they had a credit carried over from 1984 of $38,241.92. However, based on the 1985 Certificate of Assessments and Payments, the IRS contends that Plaintiffs only had a carry-over credit from 1984 of $22,458.07. This discrepancy amounts to a difference of $15,-783.85 in the parties' calculations of what should have been carried over from 1985 forward.

Plaintiffs' submission of their own copies of the 1985 and 1986 returns is all that they submit to rebut the presumption of correctness of the IRS Certificates as to the amount carried over from 1984 to 1985 (and from 1985 to 1986). What a taxpayer "claims" to be entitled to on a return does not amount to evidence of what the IRS ultimately determines to be allowable. Furthermore, to the extent that Plaintiffs rely upon David Fisher's notation on Plaintiffs' copy of their 1986 return (which, as discussed above, the IRS claims was never filed) stating, "I am still awaiting a reconciliation of this amount [$38,761.34]. Please contact me if there is anything I can do," and the subsequent notes sent to the IRS in 1990 on copies of notices Plaintiffs received of failure to file a 1986 return,[16] the Court does not find these notes to be sufficient evidence of the incorrectness of the IRS's assessment. Therefore, the Court does not find that Plaintiffs have rebutted the presumption of correctness of the amount indicated on the 1985 Certificate of Assessments and Payments as carry-over credit from 1984 (and 1985).

However, even if the Court were persuaded that Plaintiffs had presented sufficient evidence to rebut the presumption of the correctness of the amount of carry-over credit to which they were entitled in 1984 and 1985, because the Court finds that Plaintiffs have not presented sufficient evidence to rebut the IRS's position, as established in the 1986 Certificate of Assessments and Payments, that they never filed a 1986 tax return, the specific amount of the carry-over is irrelevant because the entire amount of any carry-over was properly forfeited. (See discussion which follows.)

E. *PLAINTIFFS HAVE NOT ESTABLISHED THAT THEY FILED THEIR 1986 RETURN*

██ Due to Plaintiffs' failure to file a 1986 return, the Government treated all of Plaintiffs' carry-over credit from 1985 to 1986 as payment for their 1986 taxes and was deemed paid as of April 15, 1987. *See,* 26 U.S.C. § 6513(d). Since Plaintiffs did not file a return for 1986 and did not timely file a claim for refund, Plaintiffs did not comply with the statute of limitations for seeking a claim for credit or refund of an overpayment. *See* 26 U.S.C. § 6511. Therefore, the entire amount of credit carry-over was sent to the IRS's general fund.

As indicated above, however, Plaintiffs contend that they did file their 1986 return. Other than their personal copy of a filled-out 1986 return—which as indicated above, does not establish that the return was "filed"—Plaintiffs rely upon the "Document Transmittal" cover sheet dated January 14, 1998, prepared by IRS Litigation Coordinator Mary Lawson, which accompanied copies of Plaintiffs' 1987–1996 returns from the Director of Refund Litiga-

---

**16.** In October 1989 and February 1990, the IRS sent Plaintiffs notices advising them that the IRS had not received their 1986 tax return. The notices had printed on the bottom a statement advising Plaintiffs, "You have a credit of $22,020. Please advise us of the disposition of this credit. See the back of this notice for specific instructions." Plaintiff

David Fisher hand wrote notes to the IRS on copies of the notices and sent them to the IRS protesting the $22,020 amount claiming that the amount indicated on the notice "appears to be a clerical error," and that it "should be $38,761." [See Government's Ex. O-1 and O-2.]

tion's Office at the IRS Service Center in Covington, Kentucky to the IRS District Counsel in Detroit.

(As noted, Ms. Lawson indicated on the transmittal sheet that copies of Plaintiffs' 1987 through 1996 returns were being forwarded to Detroit and further indicated that Plaintiffs' returns for 1985 *and* 1986 were filed but had been destroyed.)

However, Ms. Lawson has testified that she made a mistake when she made the notation that both the 1985 and 1986 returns were filed but had been destroyed and offered a detailed explanation for the oversight. She testified that in searching for the returns put at issue by this lawsuit, she found that the Fishers' *1985* return had been filed but that it had already been destroyed. With respect to 1986, however, her research showed that no return had ever been filed. Ms. Lawson explained that she reached this conclusion by looking at the "Master File Transcript" ("MFTRA") of the Fishers' tax return history. She explained that when a "150" transaction code appears on the Master File Transcript for a given year, that means that a return had been filed. She testified that there was no "150" code on the Master File Transcript for either of the Fishers for 1986. [Lawson Dep. p. 14.]

The Government also offers as evidence that Ms. Lawson's transmittal sheet notation was a mistake and that, in fact, the 1986 return was never filed, notes made by Ms. Lawson (which she authenticated at her deposition) that she made contemporaneously while conducting her research. On a printout of the Fishers' Master File Transcript [Government Dep. Ex. 1], along side the printout heading, "Tax Period 8612", Ms. Lawson hand wrote, "didn't file." (She also noted on the same printout "destroyed" along side the printout entry: "041586 22,020.70–8723 17211–136–

38109–7" which she testified meant only that the DLN (document location number) reserved for the Fishers' 1986 return (17211–136–38109–7) had been destroyed, not that the 1986 return was destroyed.) *Id.*

Ms. Lawson also indicated in personal log notes that she made during her search for the Fishers' tax records that no return was filed for 1986. In her notes [Government Dep. Ex. 2], Ms. Lawson noted on January 12, 1998 that there was "no return for 86". [Lawson Dep. pp. 39–40]. She also noted "85 destroyed", which she testified meant that the Fishers' 1985 tax return had been destroyed. *Id.*

Ms. Lawson also, on a contemporaneous basis, kept a chart with a running tally of each of the year's returns that she was searching for and indicated with a check mark those years for which she located a filed return. Her chart indicates that returns were found for all years after 1987 through 1996. Along side "86", however, Ms. Lawson noted "DNF", which she testified meant "document not filed". [Lawson Dep. p. 41.] (Along side "85" she noted "D" which she testified meant that the return for 1985 had been destroyed.) Id.[17] Ms. Lawson made the foregoing notes on January 12, 1998, two days before she sent the records with the transmittal cover sheet with the "mistaken" notation that the returns for 1985 and 1986 were filed joint but had been destroyed. [Lawson Dep. p. 41.]

Ms. Lawson also kept an index card file of each refund litigation request that she was asked to handle. On the index card she filled out for the Fisher request, she made the following notations:

12–10–97   rec'd call

**1–14   sent returns to Rob; 85–dest. 86 didn't file**

---

17. Both of the notations "85—destroyed—no return for 86" appear on one line of Ms. Lawson's notes. This notation is followed by the notation "joint". She testified that the "joint" notation meant only that both Mr. and

Mrs. Fisher's names appeared on the same screen of the IDRS ("Integrated Data Retrieval System") terminal, not that a 1986 return had been filed joint. [Lawson Dep. p. 40.]

1–20 sent out 4340s [18]

[Government Ex. 3 (emphasis added). See also, Lawson Dep. pp. 41–42.]

Ms. Lawson testified that she made the January 14, 1998 notation on Government Exhibit 3 *before* she prepared the transmittal letter with mistaken notation.

When asked how it was that in light of all of the notes she made while conducting her search she came to write on the transmittal cover sheet that "the periods 8512 & 8612 have been destroyed," Ms. Lawson testified that she believed that she prepared the transmittal sheet after she had all the DLNs (document location numbers) written down so that the documents would be ready for retrieval. [See Lawson Dep. p. 43] In listing the pertinent DLNs for the tax years requested, she said she worked from the MFTRA printouts for each year. *Id.* She believes that when she had the printout for 1986 in front of her, she had simply carelessly forgotten that her notation "destroyed" along side the 4/15/86 date and the 17211 DLN meant only that the DLN had been destroyed. *Id.*[19]

Ms. Lawson's testimony and the numerous contemporaneous notes she made while conducting her research clearly establish that her search revealed that no return for 1986 had been filed. This evidence far outweighs the "mere scintilla of evidence" (i.e., the document transmittal cover sheet) upon which Plaintiffs rely.

The Court finds that the foregoing evidence, "taken as a whole, could not lead a rational trier of fact to find" for Plaintiffs. Therefore, summary judgment will be granted in favor of the Government on the

issue Plaintiffs' failure to file a 1986 return.

F.  *THE EVIDENCE ESTABLISHES THAT PLAINTIFFS DID NOT FILE THEIR 1987 RETURN UNTIL AFTER THE STATUTE OF LIMITATIONS HAD EXPIRED*

■ The Government also claims that Plaintiffs forfeited their entitlement to a refund for 1987 because they did not file their return until June 7, 1991, after the three-year statute of limitations had run.[20] The Government has submitted a copy of the Fishers' filed return. [See Government's Ex. U]. On its face, the filed return is stamped "POSTMARK JUN 04 '91" and "RECEIVED JUN 07 '91 CINCINNATI SERVICE CENTER". *Id.* The Court notes that Plaintiffs' 1988 return is postmarked and noted received on the same date. [See Government Ex. V.] The Government has also produced a copy of the envelope postmarked "Detroit, MI 481— June 4, 1991." *Id.*

■ Despite this clear evidence, Plaintiffs contend they filed their return before June 1991. In support, they rely upon a notice dated October 2, 1989 regarding the 1987 tax year in which the IRS advised the Fishers:

> Our records show that you have failed to fully report your dividend and interest income on your federal income tax return and/or pay the correct tax due on this income (including penalties and interest, if any.)

[See Plaintiffs' Ex. 4.]

Through its reference to the Fishers' "federal income tax return" for the 1987 tax year, the Fishers contend that the

---

18. "4340s" is IRS shorthand for Certificates of Assessments and Payments.

19. Plaintiffs contend that Ms. Lawson's entire deposition should be discredited because she made a number of substantive changes to her testimony on her post-deposition "errata" sheets. However, the Court notes that the changes made by Ms. Lawson pertained to non-material issues with respect to the issue

of the filing/non-filing of the 1986 return. Therefore, the Court finds the errata sheet changes irrelevant for purposes of this Motion.

20. To have been timely filed so as to have been entitled to a refund or credit, Plaintiffs had to have filed their 1987 return by April 15, 1991. *See* 26 U.S.C. § 6511.

October 2, 1989 establishes that they must have filed their return before that date because to make the determination that interest or dividend income was not fully reported on their return would mean that a return had to have been in the IRS's possession as of the date of the notice.

The Government, however, points out that this notice is computer generated. It explained that such notices are issued when the IRS receives 1099s for dividend or interest income from the payors of interest (e.g., banks, credit unions, etc.) and the computer does not match it up as having been reported on a return. The same notice is issued informing a taxpayer there was unreported dividend or interest income whether it was not reported because a return was never filed, or because a return was filed but did not show the item.

Plaintiffs reliance on the October 2, 1989 notice regarding unreported dividend/interest income is further belied by the fact that the IRS sent Plaintiffs four notices after October 2, 1989—on October 16, 1989, February 20, 1990, February 1 and March 15, 1991 informing them that it had not yet received their 1987 return. [See Government's Ex. P1–P5.]

In light of the fact that the Government has produced clear evidence that Plaintiffs' 1987 return was postmarked as mailed in Detroit on June 4, 1991 and received at the IRS Cincinnati on June 7, 1991 (the date which the IRS Certificate of Assessments and Payments indicates as the filing date), the Court finds the computer generated notice relied upon by Plaintiffs to be insufficient evidence to rebut the correctness of the filing date on the Certificate. The evidence presented, taken as a whole, could not lead a rational trier of fact to find that Plaintiffs filed their 1987 return within the three-year period of limitations.

## CONCLUSION

For all of the reasons stated in this Opinion and Order,

IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment be, and hereby is, GRANTED. Plaintiffs' Complaint, therefore, will be DISMISSED in its entirety, with prejudice. Let Judgment be entered accordingly.