Edward R. DANOFF, Plaintiff,

v.

**UNITED STATES of America, Defendant.**

**No. SA CV03–945–JVS(ANX).**

United States District Court, C.D. California, Southern Division.

April 7, 2004.

Richard G Stack, AUSA - Office of US Attorney, Tax Division, Los Angeles, CA, for U.S.

## STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW

SELNA, District Judge.

The Motion to Dismiss Complaint, or Alternatively, for Summary Judgment filed by defendant, the United States of America, came on for hearing before the Court, the Honorable James V. Selna, United States District Judge, presiding, at the date, time, and place shown above. Based upon the papers filed in support of and in opposition to the Motion, the arguments made by the parties at the hearing on such Motion, and all matters properly part of the record, the Court makes the following Statement of Uncontroverted Facts and Conclusions of Law:

1. On *June 5, 2003*, plaintiff Edward R. Danoff ("plaintiff" or "Danoff") commenced this action by filing a "Complaint Against the United States of America for Refund of Monies Deposited With the Internal Revenue Service" ("Complaint"). In the Complaint, plaintiff seeks to recover from the defendant, the United States of America ("defendant" or "United States"), the sum of *$22,382.00*, plus interest and costs allowed by law.

2. On *June 25, 2003*, plaintiff served the summons and Complaint on the United States Attorney's Office, by mail.

3. Plaintiff alleges that he deposited funds of $22,382.00 with the Internal Revenue Service ("IRS" or "Service") on or about *April 15, 1996* for his future, potential personal income taxes. (Complaint, ¶ 4).

4. Plaintiff contends that when he filed his 1997 income tax return with the IRS on or about *April 11, 2001*, he requested that the $22,382.00 remain on deposit for his future, potential personal income taxes. (Complaint, ¶ 5).

5. Plaintiff alleges that, on or about *May 14, 2001*, the IRS mailed a letter to him, stating that the Service "either made changes to your [my] return or payments claimed on the return did not match our [IRS] records." That letter further advised plaintiff that, after the IRS had made changes to his return, no overpayment remained. (Complaint, ¶ 6).

6. Plaintiff alleges that after he received the May 14, 2001 letter, he immediately contacted the IRS to determine the disposition of his deposited funds. According to plaintiff, on *May 19, 2001*, an IRS employee named Ms. Aldrich (badge no. 6206351) informed him that: (1) the IRS still had his $22,382.00 on deposit as a credit against his tax account(s); (2) the IRS never should have sent the May 14, 2001 letter to plaintiff; (3) plaintiff had four years to file his return claiming entitlement to a refund or credit; and (4) since plaintiff had filed his return by April 15,

2001, his money still was available to be credited by the IRS. (Complaint, ¶¶ 7–9).

7. Although it is not specifically alleged in the Complaint, plaintiff further contends that he spoke with a different IRS employee in *May of 2000*, who initially informed him that there was no time limit for him to recover the $22,382.00 if he had "deposited" the funds with the IRS. Later during that conversation, the IRS employee allegedly informed plaintiff that he had four years from the due date of his return in order to file a claim for refund or credit of the $22,382.00.

8. On *June 25, 2001*, the IRS mailed a letter to plaintiff, notifying him that the IRS could *not* refund or credit the deposited funds of $22,382.00, since such funds were paid more than 3 years before plaintiff filed a claim, and that plaintiff had 2 years in which to file a lawsuit with the District Court seeking recovery of the $22,382.00. (Complaint, ¶¶ 10 and 13).

9. On *August 21, 2003*, the United States filed its Answer to the Complaint. In its Answer, defendant denied that plaintiff was entitled to recover any sum whatsoever by way of his Complaint, and it asserted numerous "additional" (or affirmative) defenses.

10. Defendant's primary defense is that plaintiff's Complaint and action is barred by the statute of limitations because plaintiff did not make any payments to the IRS during the 3–year period "immediately preceding the filing of" his refund claim for the **year 1996** on *April 11, 2001*, as required by 26 U.S.C. § 6511(b)(2)(A). (Answer, Additional Defense No. 3).

11. Defendant also disputes certain allegations that plaintiff has made in the Complaint, namely, the dates on which he filed certain income tax returns and that the disputed funds of $22,382.00 constitute a "deposit" rather than a "payment" of tax.

12. On or about *December 13, 1995*, plaintiff filed his *1994* Federal income tax return with the IRS. (*Exhibits A and B* [1], Form 4340, Certificate of Assessments, Payments, and Other Specified Matters regarding Federal income tax return, Form 1040, of plaintiff Edward R. Danoff for period ending December 31, 1994, certified on August 28, 2003; and Retention Register dated July 29, 2003 pertaining to plaintiff's 1994 Federal income tax return, entry "Received–Date: 12311995").[2]

13. On his 1994 return, plaintiff reported total tax in the amount of $10,374.00, which the IRS assessed on *January 8, 1996*. (Exhibit A, entry "Return Filed and Tax Assessed"). Plaintiff also reported on his 1994 return credits for a "Subsequent Payment" in the amount of $5,000.00 and an "Overpaid Credit From Prior Tax Period" in the amount of $27,756.00. (Exhibit A). As a result, plaintiff reported a tax overpayment in the amount of *$22,382.00* on his 1994 return, which plaintiff timely elected to have the IRS apply toward his estimated income taxes for *1995*. (Exhibit A, entry "Overpayment Credit Elect Transferred to Next Tax Period").

14. Thus, that overpayment was deemed transferred to plaintiff's 1995 tax account as of *April 15, 1996*. *See* 26 U.S.C. §§ 6513(b)(2) and (d).

15. On *August 21, 1997*, plaintiff filed his *1995* Federal income tax return with

---

1. All references to alphabetic exhibits pertain to the exhibits attached to the declaration of Richard G. Stack submitted in support of defendant's Motion.

2. Pursuant to its standard record retention policy, the IRS has destroyed plaintiff's 1994

return. For that reason, defendant attached to its Motion the Certificate of Assessments and the Retention Register, which record the tax information that plaintiff reported on his 1994 return.

the IRS. (*Exhibit C*, U.S. Individual Income Tax Return, Form 1040, of Edward R. Danoff for period ended December 31, 1995).

16. On his 1995 return, plaintiff reported total tax liability of $0.00 and an overpayment in the amount of *$22,382.00* (arising from an overpayment credit election transfer that plaintiff had made on his 1994 return). Plaintiff timely elected to have the IRS apply the overpayment shown on his 1995 return toward his estimated income taxes for *1996*.

17. Thus, such overpayment was deemed transferred to plaintiff's 1996 tax account as of *April 15, 1997*. *See* 26 U.S.C. §§ 6513(b)(2) and (d).

18. On *April 11, 2001*, plaintiff belatedly filed his *1996* Federal income tax return with the IRS. (*Exhibit D*, U.S. Individual Income Tax Return, Form 1040, of Edward R. Danoff for period ended December 31, 1996).

19. On or about *April 15, 1997*, plaintiff obtained an extension of time to file his 1996 return to *August 15, 1997*. (*Exhibit E*, literal transcript of account regarding plaintiff's 1996 return, entry dated April 15, 1997, entitled "Extension of Time to File, Ext. Date 08–15–1997").

20. On his 1996 return, plaintiff reported total tax liability of $0.00 and an overpayment in the amount of *$22,382.00* (arising from an overpayment credit election transfer that plaintiff had made on his 1995 return). Plaintiff attempted to make an election on his 1996 return to have the IRS apply that overpayment toward his estimated income taxes for *1997*.

21. Plaintiff did not file his *1997* return with the IRS until *April 15, 2002*. (*Exhibit F*, U.S. Individual Income Tax Return, Form 1040, of Edward R. Danoff for period ended December 31, 1997).

22. By certified letter dated *June 25, 2001*, the IRS Service Center in Fresno, California ("Fresno Service Center") notified plaintiff of the disallowance of his claim for refund or credit for tax year 1996 in the amount of *$22,382.00*, received on *April 11, 2001*. (*Exhibit G*, certified letter dated June 25, 2001 from Fresno Service Center to plaintiff).[3]

23. By nearly identical letters to the Fresno Service Center dated *April 26, 2002* and *June 19, 2002*, plaintiff responded to the Service's notice of disallowance letter dated June 25, 2001. (*Exhibits H and I*).[4] In those letters, plaintiff attempted to explain why he did not file his refund claim for 1996 until April 11, 2001.

24. In the Motion, defendant sought to obtain the following two determinations, which would be dispositive of this case:

a. That plaintiff is not entitled to the refund or credit of *any portion* of his claimed 1996 income tax overpayment in the amount of $22,382.00 because such tax was "deemed paid" on *April 15, 1997* (*see* 26 U.S.C. §§ 6513(b)(2)), before the 3–year "lookback" period prescribed by 26 U.S.C. § 6511(b)(2)(A),[5] which limits

---

3. The June 25, 2001 letter sets forth the following specific basis for the disallowance of plaintiff's refund claim:

 "You filed your claim for credit or refund more than 3 years after the return due date, including any filing extension you requested for this return. The law states that we can't refund or credit tax to you if you paid it more than 3 years before the date you filed the claim. We consider withheld tax, estimated tax, or earned income credit as paid on the return due date."

4. The copy of the April 26, 2002 letter in the Service's administrative files regarding plaintiff lacks a page 3.

5. In the Motion, the United States contended that this 3–year lookback period extended from *December 11, 1997* through *April 11, 2001*, i.e., the 3–year period immediately preceding the filing of plaintiff's refund claim

the amount of a recoverable refund or credit.

b. That, as a matter of law, plaintiff is *not* entitled to relief from the operation of 26 U.S.C. § 6511(b)(2)(A) based upon the doctrine of equitable estoppel.

25. Any conclusion of law deemed more appropriately to be a finding of fact is incorporated herein as a finding of fact.

### CONCLUSIONS OF LAW

*THE COURT LACKS SUBJECT MATTER JURISDICTION OVER PLAINTIFF'S COMPLAINT AND ACTION*

*Doctrine of Sovereign Immunity and Strict Construction of Statute of Limitations in Tax Refund Cases*

■ 1. As a sovereign, the United States is immune from suit without its consent. The terms of the United States' consent to be sued, when granted, circumscribe the court's jurisdiction. *United States v. Dalm,* 494 U.S. 596, 608, 110 S.Ct. 1361, 1368, 108 L.Ed.2d 548 (1990).

■ 2. The applicable statute of limitations is a term by which the United States has consented to be sued. *Nesovic v. United States,* 71 F.3d 776, 777 (9th Cir. 1995). Because .a statute of limitations constitutes a condition on the Government's waiver of immunity, *United States v. Mottaz,* 476 U.S. 834, 841, 106 S.Ct. 2224, 2229, 90 L.Ed.2d 841 (1986), it should be "construed strictly in favor of the sovereign, and not enlarge[d] * * * beyond what the [statutory] language requires." *Ruckelshaus v. Sierra Club,* 463 U.S. 680, 685, 103 S.Ct. 3274, 3278, 77 L.Ed.2d 938 (1983).

3. Statutes of limitation have long been considered of particular importance in tax cases. *See Rothensies v. Electric Storage Battery Co.,* 329 U.S. 296, 301, 67 S.Ct.

271, 273, 91 L.Ed. 296 (1946) (". . . a statute of limitation is an almost indispensable element of fairness as well as of practical administration of an income tax policy").

4. Thus, "[i]f there are to be exceptions to the statute of limitations [in tax cases], it is for Congress rather than for the courts to create and limit them." *Id.,* 329 U.S. at 303, 67 S.Ct. at 274. *See also Badaracco v. Commissioner of Internal Revenue,* 464 U.S. 386, 398, 104 S.Ct. 756, 764, 78 L.Ed.2d 549 (1984) ("Courts are not authorized to rewrite a statute because they might deem its effects susceptible of improvement. This is especially so when courts construe a statute of limitations, which must receive a strict construction in favor of the Government"); *Commissioner of Internal Revenue v. Lundy,* 516 U.S. 235, 116 S.Ct. 647, 133 L.Ed.2d 611 (1996) (discussing application of time limitations of Section 6511 to filing of returns and refund claims, Supreme Court noted that it was "bound by the language of the statute as it is written," and that courts are not at liberty " 'to rewrite [the] statute because [they] might deem its effects susceptible of improvement' ") (citation omitted); *United States v. Brockamp,* 519 U.S. 347, 117 S.Ct. 849, 136 L.Ed.2d 818 (1997) (doctrine of "equitable tolling" cannot be applied to extend time period for filing tax refund claim or substantive limitations on amount of recovery under 26 U.S.C. § 6511, even where taxpayer was mentally disabled from timely filing refund claim).

*Specific Jurisdictional Requirements for Refund Suits*

5. Pursuant to 28 U.S.C. § 1346(a), the United States has waived its sovereign immunity and District Courts have jurisdiction over suits to recover internal revenue taxes.

(the Form 1040 for 1996 filed on April 11, 2001), plus the 4 month extension that plaintiff obtained for filing his 1996 return.

6. In suits for tax refunds, the United States has consented to be sued, but only when the taxpayer follows the conditions set forth in 26 U.S.C. § 7422(a). Section 7422(a) states: "No suit [for refund] * * * shall be maintained in any court * * * until a claim for refund or credit has been duly filed with the Secretary or his delegate, according to the provisions of law in that regard, and the regulations of the Secretary or his delegate . established in pursuance thereof." [6]

■ 7. Unless a taxpayer has "duly filed" a claim for refund of Federal taxes with the IRS, the district court is without jurisdiction to entertain a suit for refund. *See Boyd v. United States,* 762 F.2d 1369, 1371 (9th Cir.1985); 26 U.S.C. § 7422(a).

■ 8. A claim is not considered "duly filed" unless it is timely. *Northern Life Ins. Co. v. United States,* 685 F.2d 277, 279 (9th Cir.1982). Thus, the taxpayer's failure to file an administrative claim within the applicable limitations period prescribed by 26 U.S.C. § 6511 divests the district court of jurisdiction over an action for refund or credit. *Omohundro v. United States,* 300 F.3d 1065, 1067 (9th Cir.2002).

9. 26 U.S.C. § 6511 contains two separate and distinct hurdles that a taxpayer must overcome in order to obtain a tax refund. *First,* the taxpayer must demonstrate that he filed a claim for refund "within 3 years from the time the return was filed or 2 years from the time. the tax was paid, whichever of such periods expires the later." 26 U.S.C. § 6511(a). *Second,* if the taxpayer timely has filed a claim for refund, then the amount of the credit or refund that he is entitled to obtain is limited by the provisions of 26 U.S.C. § 6511(b).[7] *See Lundy,* 516 U.S. 235, 116 S.Ct. 647 (26 U.S.C. § 6511 contains two separate periods, a "filing deadline" and a "look-back period"); *Zeier v. United States,* 80 F.3d 1360, 1364 (9th Cir.1996) ("[f]ollowing *Lundy,* we hold that § 6511(b)(2)(A) is jurisdictional"). *See also Oropallo v. United States,* 994 F.2d 25, 30 (1st Cir.1993) (Breyer, J.).

10. In the instant case, defendant does not dispute the timeliness of plaintiff's claim for refund or credit for tax year 1996 for purposes of 26 U.S.C. § 6511(a). Defendant, however, contends that the amount of plaintiff's recoverable refund or credit is limited to *$0.00,* based upon the application of 26 U.S.C. § 6511(b)(2)(A).

*Ability of IRS to Authorize Tax Refunds*

11. Section 6402(a) generally provides that the IRS is not authorized to issue a tax refund unless and until the taxpayer has overpaid his taxes.[8] The IRS *cannot*

---

**6.** A claim for credit or refund of an overpayment "shall be made on the appropriate income tax return" (Treas.Reg. § 301.6402–3(a)(1), 26 C.F.R.), which, for an individual taxpayer, is Form 1040 or 1040A (Treas.Reg. § 1.6012–1(a)(6)). If an individual income tax refund is claimed subsequent to filing a Form 1040 or 1040A, "a claim for refund shall be made on Form 1040X ('Amended U.S. Individual Income Tax Return')." Treas. Reg. § 301.6402–3(a)(2). *See Weisman v. Commissioner of Internal Revenue,* 103 F.Supp.2d 621, 627 (E.D.N.Y.2000).

**7.** Section 6511(b) establishes two "lookback" periods which limit the amount of refund or credit that a taxpayer may recover. *Omohundro v. United States,* 300 F.3d at 1067, fn. 1.

The lookback period of § 6511(b) applicable here states:

(2) Limit on amount of credit or refund.

(A) **Limit where claim filed within 3–year period.** If the claim was filed. by the taxpayer during the 3–year period prescribed in subsection (a), the amount of the credit or refund shall not exceed the portion of the tax paid within the period, immediately preceding the filing of the claim, equal to 3 years plus the period of any extension of time for filing the return.

**8.** 26 U.S.C. § 6402(a) provides as follows:

Authority to make credits or refunds.

(a) General rule.

In the case of any overpayment, the Secretary, within the applicable period of limi-

allow or make a credit or refund of an overpayment unless the taxpayer has filed a claim therefor before expiration of the applicable statute of limitations—26 U.S.C. § 6511. *See* Treas. Reg. § 301.6402–2(a)–1.

12. 26 U.S.C. § 6402(b) allows the taxpayer to make an election claiming an overpayment as a credit against his estimated tax for the succeeding taxable year. Section 6402(b) similarly is subject to the requirement that any claim for credit or refund must be filed within the limitations period specified by 26 U.S.C. § 6511. *See Burr v. Commissioner*, 2002 WL 459233, T.C. Memo.2002–69 (U.S.Tax Ct.2002) (tax overpayment for one year could not be credited against estimated tax for subsequent year, where taxpayer did not claim credit for overpayment within applicable statute of limitations, 26 U.S.C. §§ 6511(a) and 6511(b)(2)(B)); *Stephenson v. Commissioner of Internal Revenue*, 1995 WL 27093 (U.S.Tax Ct.), T.C. Memo.1995–33 ("An overpayment may not be credited against estimated tax for a subsequent taxable year, unless the claim for credit itself was filed within the statutory period set forth in section 6511").

*Deemed Payment Date of Estimated Income Taxes and Overpayment Credit Transfers for Tax Refund Purposes*

13. Pursuant to 26 U.S.C. § 6513(b), remittances of estimated income taxes and income taxes withheld from a taxpayer's wages during the calendar year are deemed paid, for tax refund purposes, on the date the return is due, regardless of extensions.[9]

14. In turn, 26 U.S.C. § 6513(d) specifies the treatment of income tax overpayments credited to estimated tax. It provides, as follows:

"If any overpayment of income tax is, **in accordance with section 6402(b),** claimed as a credit against estimated tax for the succeeding taxable year, such amount shall be considered as a payment of the income tax for the succeeding taxable year (whether or not claimed as a credit in the return of estimated tax for such succeeding taxable year), and no claim for credit or refund of such overpayment shall be allowed for the taxable year in which the overpayment arises." (emphasis supplied).

15. Thus, outside of the bankruptcy context, once the taxpayer makes an election under 26 U.S.C. § 6402(b) to have the IRS credit an overpayment for one tax year against his estimated tax liability for a succeeding tax year, the election is **irrevocable**. *Georges v. United States*, 916 F.2d 1520, 1521 (11th Cir.1990) (taxpayer who filed election on 1985 return to have overpayment credited to his estimated tax for 1986 could not thereafter file amended 1985 return, which sought to revoke his prior election and obtain direct tax refund

---

tations, may credit the amount of such overpayment, including any interest allowed thereon, against any liability in respect of an internal revenue tax on the part of the person who made the overpayment and shall, subject to subsections (c) and (d), refund any balance to such person.

9. Section 6513 provides as follows:
(b) Prepaid income tax.
For purposes of section 6511 or 6512 -
(1) Any tax actually deducted and withheld at the source during any calendar year under chapter 24 shall, in respect of the recipient of the income, be deemed to have been paid by him on the 15th day of the fourth month following the close of his taxable year with respect to which such tax is allowable as a credit under section 31.
(2) Any amount paid as estimated income tax for any taxable year shall be deemed to have been paid on the last day prescribed for filing the return under section 6012 for such taxable year (determined without regard to any extension of time for filing such return).

for 1985 *in lieu of* credit to his 1986 estimated tax, since such an election is irrevocable); Treas. Reg. § 301.6402–3(a)(5).[10] *See also Fisher v. United States,* 61 F.Supp.2d 621, 623 (E.D.Mich.1999) (when taxpayer indicates on his tax return that all or part of overpayment shown on return is to be applied to his estimated tax liability for following year, election becomes irrevocable and amounts lose their character as overpayments for years in which they arose and become tax payments for succeeding year).

*The Supreme Court's Decision in Baral*

■ 16. In *Baral v. United States,* 528 U.S. 431, 120 S.Ct. 1006, 1009–1011, 145 L.Ed.2d 949 (2000), the Supreme Court held that remittances of estimated income tax and withholding tax were deemed "paid" on the due date of the taxpayer's income tax return (*see* 26 U.S.C. § 6513(b)), rather than on the date of assessment, and thus, that the IRS properly denied a claimed credit because the taxpayer did not make any payments during 3–year "lookback" period provided by 26 U.S.C. § 6511(b)(2)(A).

17. In *Baral,* two remittances were made to the IRS toward the taxpayer's income tax liability for 1988. The first was income taxes of $4,104 that Baral's employer withheld from his wages during 1988. The second was an estimated income tax payment of $1,100 that Baral had remitted to the IRS out of concern that his employer's withholding might be inadequate to meet his tax obligation for the year. Although Baral's income tax return for 1988 ordinarily would have been due on

April 15, 1989, Baral received an extension of time to file his return until *August 15, 1989.* Baral missed that deadline and did not file his 1988 return until *June 1, 1993,* nearly four (4) years later. On July 19, 1993, the IRS assessed the tax liability that Baral had reported on his belated 1988 return. *Id.,* 528 U.S. at 432–33, 120 S.Ct. at 1007.

18. On his 1988 return, Baral claimed that he and his employer had remitted $1,175 more with respect to the year 1988 than he actually owed. Baral requested that the Service apply the excess as a credit toward his outstanding tax obligations for the 1989 tax year. The Service denied the requested credit because the amount claimed exceeded the ceiling imposed by 26 U.S.C. § 6511(b)(2)(A). Since Baral had filed his return on June 1, 1993, and had received a 4–month extension from the initial due date, the relevant lookback period under § 6511(b)(2)(A) extended from June 1, 1993, back to February 1, 1990 (3 years plus 4 months). According to the IRS, Baral had paid no portion of the overpaid tax during that period, and so faced a ceiling of zero on any allowable refund or credit. *Id.,* at 433–34, 120 S.Ct. at 1007–08.

19. The Government contended that 26 U.S.C. §§ 6513(b)(1) and (2) unequivocally provide that the remittances at issue there were "paid" on *April 15, 1989,* for purposes of § 6511(b)(2)(A), so that they **preceded** the look-back period, which commenced on *February 1, 1990.* On the other hand, Baral argued that a tax cannot be "paid" within the meaning of § 6511(b)(2)(A) until the tax liability is as-

---

**10.** That Treasury Regulation provides as follows:

"If the taxpayer indicates on its return (or amended return) that all or part of the overpayment shown by its return (or amended return) is to be applied to its estimated income tax for its succeeding taxable year, such indication shall constitute an election to so apply such overpayment, and no interest shall be allowed on such portion of the overpayment credited and such amount shall be applied as a payment on account of the estimated income tax for such year or the installments thereof."

sessed, or definitively fixed. *Id.*, at 434–35, 120 S.Ct. at 1008.

20. Rejecting Baral's interpretation of 26 U.S.C. § 6513(b), the Court reasoned as follows:

"Subsection (1) resolves when the remittance of withholding tax by Baral's employer was 'paid': Since Baral is a calendar year taxpayer, the $4,104 withheld from his wages during the 1988 calendar year was 'paid' on April 15, 1989. Subsection (2) determines when Baral's remittance of estimated income tax was 'paid': Since the referenced § 6012 together with § 6072(a) requires that a calendar year taxpayer like Baral file his income tax return on the April 15th following the close of the calendar year, the $1,100 remitted as an estimated income tax in respect of Baral's 1988 tax liability was likewise 'paid' on April 15, 1989. And both of these statutorily defined payment dates apply '[f]or purposes of section 6511,' the provision directly at issue in this case. This means that, under § 6511(b)(2)(A), both remittances at issue (the withholding and the estimated income tax) fall before, and hence outside, the look-back period, which commenced on February 1, 1990. **Because neither these remittances nor any others were 'paid' within the look-back period (February 1, 1990, to June 1, 1993), the ceiling on Baral's requested credit of $1,175 is *zero*, and the Service was correct to deny the requested credit."**

*Id.*, 528 U.S. at 435–36, 120 S.Ct. at 1009 (emphases supplied).

21. Ninth Circuit case law decided before *Baral* interpreted the "deemed paid" provisions of 26 U.S.C. § 6513(b) consistently with that decision. *See Ott v. United States*, 141 F.3d 1306, 1309–10 (9th Cir.1998) (taxpayer's remittance submitted with request for extension of time to file return was tax payment, not merely depos-

it against potential liability, and limitations period for seeking refund of taxes paid in connection with that return began to run at time of remittance); *Zeier v. United States*, 80 F.3d 1360, 1364 (9th Cir.1996) (remittances of estimated estate taxes constituted payments, and not deposits, even though remittances were made before IRS made formal assessment of estate's tax liability, since estate itself described remittances as payments and estate could not receive refund of remittances more than 3 years after they were made, *citing*, 26 U.S.C. §§ 6511(b)(2)(A)); *Ehle v. United States*, 720 F.2d 1096 (9th Cir.1983) (amounts withheld from taxpayer's wages were paid for purposes of 3 year limitations period for refund actions on April 15th following close of tax year even though taxpayer intended amounts withheld from his wages to be merely deposits and even though he allegedly had no tax liabilities for years in question, *citing*, 26 U.S.C. §§ 6511(b)(2)(A) and 6513(b)(1)).

*Plaintiff is Not Entitled to Any Credit or Refund Because He Did Not Make Any Payments to the IRS During the Three-Year Lookback Period of 26 U.S.C. § 6511(b)(2)(A)*

22. Plaintiff herein filed his 1995 Federal income tax return with the IRS on *August 21, 1997.* (*Exhibit C* ).

23. On his 1995 return, plaintiff reported total tax liability of $0.00 and an overpayment in the amount of *$22,382.00*, which plaintiff elected to have applied toward his estimated income taxes for *1996.*

24. Thus, such overpayment **statutorily was deemed made** to plaintiff's 1996 tax account as of *April 15, 1997. See Baral*, 528 U.S. at 435–36, 120 S.Ct. at 1009 and 26 U.S.C. § 6513(b)(2).

25. Although plaintiff obtained an extension of time to file his 1996 Federal income tax return to August 15, 1997 (Exhibit E), he did not actually file his return with the IRS until April 11, 2001. (*Exhib-*

*it D* ). Consequently, the 3–year lookback period prescribed by 26 U.S.C. § 6511(b)(2)(A) extended from *April 11, 2001* back to *December 11, 1997,* i.e., three years, plus four months.

26. The remittance at issue here, "deemed paid" on *April 15, 1997,* falls before, and hence, outside of the look-back period (December 11, 1997 through April 11, 2001).

■ 27. Accordingly, the IRS correctly denied the credit of $22,382.00 that plaintiff attempted to claim on his 1996 return. *See Baral,* at 435–36, 120 S.Ct. at 1009; 26 U.S.C. §§ 6513(b)(2) and 6511(b)(2)(A).

28. Numerous additional authorities support the Court's conclusion that plaintiff is barred from receiving **any credit or refund** for the tax year 1996. *See Chemical Bank New York Trust Co. v. United States,* 275 F.Supp. 26, 28–31 (S.D.N.Y. 1967), *aff'd per curiam,* 386 F.2d 995 (2d Cir.1967) (taxpayer who remitted estimated *1957* income taxes but had not filed tax returns claiming refund for tax years 1957–1960 until *1962,* was barred by limitation statute from maintaining such refund claim notwithstanding his assertion that remittances of estimated taxes merely were payments "on account" in nature of deposits in escrow, since 26 U.S.C. § 6511(b)(2)(A) provides that claim for credit of tax overpayment may not be asserted for overpayment made more than 3 years prior to claim); *Binder v. United States,* 590 F.2d 68, 69–71 (3d Cir.1978) (suit seeking to recover monies that taxpayer and his employer had paid as "escrow payments" of estimated income taxes and withholding taxes was time barred because amounts were deemed "paid" more than 3 years before plaintiff filed his administrative refund claim, where taxpayer failed to show that he or his employer,

in making such payments, in any way indicated that such money was to be set aside in suspense account or otherwise until his tax liability was determined); *United States v. Miller,* 315 F.2d 354 (10th Cir. 1963) (payments made by taxpayers in *January of 1953 and 1954,* unaccompanied by tax returns were payments mistakenly made as estimated income tax for 1952 and 1953, rather than voluntary remittances, and claim for refund made in *1960,* along with filing of returns for 1952 and 1953 showing no taxes due for such years, was barred by 3 year statute of limitations); *In Matter of Sims,* 1991 WL 253017, 71 AFTR 2d 93–4023, 91–2 USTC ¶ 50,510 (Bkrtcy.E.D.La. Aug.28, 1991) (taxpayer who filed 1982 return requesting that his overpayment be applied toward his estimated taxes for year 1983, which was deemed paid on *April 15, 1984,* but who did not file his 1983 return until *March 30, 1989* was not entitled to have his claimed overpayment for 1983 applied toward his estimated taxes for 1984, since claim for such credit was barred by 3–year statute of limitations of 26 U.S.C. § 6511(b)(2)(A)).

*THE COMPLAINT FAILS TO STATE A CLAIM ON WHICH RELIEF CAN BE GRANTED*

*Plaintiff's Claim That He Made a "Deposit" of Taxes, Rather Than a Payment is Barred by 26 U.S.C. § 6513(b)(2)*

■ 29. Plaintiff's apparent theory that the amount he remitted as estimated income taxes, by means of an overpayment credit transfer election that he made on his 1995 return, was a "deposit" rather than a "payment" of tax is unsupported by any evidence and the applicable law.

30. This theory also is foreclosed by the numerous allegations made in the Complaint that plaintiff seeks the "refund" of income taxes,[11] plus statutory interest

---

**11.** For example, plaintiff has styled this action as a "Complaint Against the United States of America for *Refund* of Monies Deposited With

the Internal Revenue Service" (emphasis added). In paragraph 3 of the Complaint, plain-

on the amount remitted.[12] In any event, *Baral* and 26 U.S.C. § 6513(b)(2), pursuant to which the $22,382.00 is deemed to have been paid as "estimated tax" on April 15, 1997, clearly bar plaintiff's "deposit" theory.[13]

31. In so concluding, this Court is aware of the Supreme Court's decision in *Rosenman v. United States*, 323 U.S. 658, 662, 65 S.Ct. 536, 89 L.Ed. 535 (1945). There, executors of an estate made pay-

ments in advance of the assessment of a tax deficiency to avoid the accrual of penalties and interest on the anticipated deficiency. The *Rosenman* Court held that sums paid to the IRS under *explicit protest* before any tax assessment was made, and deposited by the IRS into a *"suspense account,"* did not constitute a "payment" until the tax liability at issue had been determined and the funds were applied to discharge such liability.

---

tiff alleges that: "This is an action for the recovery of a federal income tax *refund* ..." *See also* Complaint, ¶ 10 (in alternative, plaintiff seeks refund of subject amount).

Later in paragraph 3 of the Complaint, plaintiff alleges that "this Court has jurisdiction by reason of 28 U.S.C. Section 1346(a)(1)." 28 U.S.C. § 1346(a)(1) grants the district courts original jurisdiction of "[a]ny civil action ... for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, ... or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws." Analyzing the interplay between 28 U.S.C. § 1346(a) and 26 U.S.C. §§ 7422(a) and 6511(a), the Court in *Dalm* observed:

> "Read together, the import of these sections is clear: unless a claim for refund of a tax has been filed within the time limits imposed by § 6511(a), a suit for refund, regardless of whether the tax is alleged to have been 'erroneously,' 'illegally,' or 'wrongfully collected,' §§ 1346(a)(1), 7422(a), may not be maintained in any court."

494 U.S. at 602, 110 S.Ct. at 1365. The *Dalm* Court also rejected, as artificial, a distinction that the dissenters attempted to create between "refund actions" and "suits for funds wrongfully retained," instead opting for a "commonsense" approach to the term "overpayment":

> "Neither the IRC nor our authorities support the distinction. Section 6511(a) applies to claims for refund of a tax 'overpayment.' The commonsense interpretation is that a tax is overpaid when a taxpayer pays more than is owed, for whatever reason or no reason at all.... The word encompasses 'erroneously,' 'illegally,' or 'wrongfully' collected taxes, as those terms are used in 28

U.S.C. § 1346(a)(1)(1982 ed.) and § 7422(a)."

*Dalm*, 494 U.S. at 609, 110 S.Ct. at 1368–69, fn. 6.

**12.** *See* Complaint, ¶ 15. Plaintiff's request for statutory interest on the principal amount remitted is inconsistent with his theory that such amount represents a "deposit" rather than a "payment" of tax. It is well settled that a taxpayer is *not* entitled to receive statutory interest on a tax "deposit," whereas he *is* entitled to receive statutory interest on a tax "payment." *See Becker Brothers, Inc. v. United States*, 61 A.F.T.R.2d 88–1146, 88–1151(P–H), 1988 WL 75234 (C.D.Ill.1988); 26 U.S.C. § 6601(a) ("Interest shall be allowed and paid upon any **overpayment in respect of any internal revenue tax** at the overpayment rate established under section 6621") (emphasis supplied).

**13.** There is a plain distinction between a "deposit" and a "payment" of taxes. Whereas a "deposit" represents a remittance to the IRS for a contingent, future liability which may or may not become due, a "payment" of taxes represents a remittance "in response to an assessment or to discharge all or part of an existing tax liability * * *." *Blatt v. United States*, 34 F.3d 252, 254–55 (4th Cir.1994) (citations omitted). That is, "the essence of the distinction between a deposit and a payment of taxes is derived from the characteristic about the former that it is *paid to be held in escrow* and the latter that it is *paid to discharge an existing obligation.*" *Id.* at 255 (emphasis in original). *See also Qureshi v. United States Internal Revenue Service*, 75 F.3d 494, 496 (9th Cir.1996) (citations omitted) ("A remittance or amount collected is recognized as a 'payment' to the IRS when it discharges a definite obligation").

32. *Rosenman* does not alter the conclusion that the remittance here is a payment. Unlike *Rosenman,* plaintiff has not alleged, and no evidence suggests, that his remittance was accompanied by an explicit letter of protest, or that the IRS placed the remittance in a separate "suspense account" pending the making of a deficiency assessment against plaintiff. Rather, plaintiff *explicitly designated on his 1995 return,* filed on August 21, 1997, that the reported overpayment of $22,382.00 be applied to his estimated tax for 1996. The IRS applied that overpayment in accordance with plaintiff's election. Consequently, *Rosenman* provides no basis for concluding that plaintiff's remittance was anything other than a tax payment.

33. In any event, the Supreme Court in *Baral* distinguished *Rosenman* on the following basis:

"Nor does Baral's argument find support in our decision in *Rosenman v. United States,* ... where we applied § 6511's predecessor to a remittance of estimated estate tax.... But the remittance in *Rosenman,* unlike the ones here, was not governed by a 'deemed paid' provision akin to § 6513, and we therefore had no occasion to consider the implications of such a provision for determining when a tax is 'paid' under the predecessor to § 6511."

*Baral,* 528 U.S. at 438, 120 S.Ct. at 1010.[14] *See also Ehle,* 720 F.2d at 1097 (finding that *Rosenman* has been "superseded" by "the clear language of section 6513(b)(1)").

34. Thus, the Court hereby disallows plaintiff's attempt to use the IRS as a "bank" to place his money on deposit indefinitely. *See Gouin v. United States,* 1988 WL 126566, 62 A.F.T.R.2d 88–5654, 88–2 USTC ¶ 9534 (D.Mass.1988) (court rejected taxpayers' argument that they were entitled to credit for excess taxes withheld from wages on theory that such sums constituted "deposits" that could be applied to their liability for previous tax year, since they did not make any payments within 3–year period immediately preceding filing of belated return claiming refund).[15]

---

14. The Supreme Court in *Baral* further noted: "We need not address the proper treatment under § 6511 of remittances that, unlike withholding and estimated income tax, are not governed by a 'deemed paid' provision akin to § 6513(b). Such remittances might include remittances of estimated estate tax, as in *Rosenman,* or remittances of any sort of tax by a taxpayer under audit in order to stop the running of interest and penalties, [citation omitted]. In the latter situation, the taxpayer will often desire treatment of the remittance as a deposit—even if this means forfeiting the right to interest on an overpayment—in order to preserve jurisdiction in the Tax Court, which depends on the existence of a deficiency, 26 U.S.C. § 6213 (1994 ed. and Supp. III), a deficiency that would be wiped out by treatment of the remittance as a payment. We note that the Service has promulgated procedures to govern classification of a remittance as a deposit or payment in this context. *See* Rev. Proc. 84–58, 1984–2 Cum. Bull. 501." *Id.,* 528 U.S. at 439, 120 S.Ct. at 1011, fn. 11.

15. In rejecting that argument, the court in *Gouin* stated:

"Plaintiffs' 'deposit' theory is precluded by the plain limitations imposed by the statute [26 U.S.C. § 6511(b)(2)(A) ] as well as by sound public policy. If taxpayers could effectively 'deposit' overpayments with the I.R.S. and make 'withdrawals' at their pleasure, the government's interest in the uniform and orderly administration of the tax laws would be severely undercut. The limitations imposed by section 6511 exist, in part, **to prevent taxpayers from using the I.R.S. as a bank.** The Gouins' claim for credit or refund is little more than an attempt to use the I.R.S. for this unauthorized purpose.

If the Gouins' deposit theory were sound, as soon as taxpayers in plaintiffs' position claimed a credit under section 6511(a), they would be able to maintain their 'deposit' permanently and claim a refund anytime they pleased—even 20, 30 or 40 years later."

*Id.,* 1988 WL 126566, *5 (emphasis supplied).

*The Doctrine of Equitable Estoppel Cannot be Used to Extend or Toll the Time to File a Tax Refund Claim*

35. In *Brockamp*, 519 U.S. 347, 117 S.Ct. 849, 136 L.Ed.2d 818, the Supreme Court addressed the following specific issue: "Can courts toll, for nonstatutory equitable reasons, the statutory time (and related amount) limitations for filing tax refund claims set forth in § 6511 of the Internal Revenue Code of 1986?" *Id.* at 348, 519 U.S. 347, 117 S.Ct. 849, 136 L.Ed.2d 818. The Court answered that question "no" because Congress did *not* intend equitable doctrines to apply to the time limits of 26 U.S.C. § 6511.[16]

36. The **equitable estoppel** argument made by plaintiff herein is similar to the **equitable tolling** claim at issue in *Brockamp*.

37. In cases decided subsequent to *Brockamp*, the courts uniformly have held that equitable principles, including the doctrine of **equitable estoppel**, *cannot* toll statutes of limitation in tax refund suits. *See RHI Holdings, Inc. v. United States*, 142 F.3d 1459 (Fed.Cir.1998) (applying *Brockamp* and finding that two year limitations period for tax refund claims when taxpayer files waiver of notice of disallowance, 26 U.S.C. § 6532(a)(3), does not contain implied exception that would allow United States to be estopped from asserting statute of limitations); *Thomasson v. United States*, 1997 WL 220321, *4, 79 A.F.T.R.2d (RIA) 97–2678, 97–1 U.S.T.C. (CCH) ¶ 50,430 (N.D.Cal. 1997) (court dismissed refund suit, as untimely filed, although IRS agents erroneously informed taxpayer's accountant during 2–year period for filing suit, 26 U.S.C. § 6532(a)(1), that IRS would issue refund to taxpayer although exact amount had not been determined, since *Brockamp* "foreclosed all equitable exceptions to the limitations period provided in § 6511"); *Brummett v. United States*, 218 F.Supp.2d

---

**16.** The Court in *Brockamp* reasoned that the "highly detailed technical" language of Section 6511 was not consistent with an equitable tolling exception:

"Section 6511 sets forth its time limitations in unusually emphatic form. Ordinarily limitations statutes use fairly simple language, which one can often plausibly read as containing an implied 'equitable tolling' exception. [citation omitted]. But § 6511 uses language that is not simple. It sets forth its limitations in a highly detailed technical manner, that, linguistically speaking, cannot easily be read as containing implicit exceptions. Moreover, § 6511 reiterates its limitations several times in several different ways. * * * [quotations of 26 U.S.C. §§ 6511(a), (b)(1), (b)(2)(A), and (b)(2)(B) omitted].

The Tax Code reemphasizes the point when it says that refunds that do not comply with these limitations 'shall be considered erroneous,' § 6514, and specifies procedures for the Government's recovery of any such 'erroneous' refund payment. §§ 6532(b), 7405. In addition, § 6511 sets forth explicit exceptions to its basic time limits, and those very specific exceptions do not include 'equitable tolling.' See § 6511(d) * * *

To read an 'equitable tolling' provision into these provisions, one would have to assume an implied exception for tolling virtually every time a number appears. To do so would work a kind of linguistic havoc. Moreover, such an interpretation would require tolling, not only procedural limitations, but also substantive limitations on the amount of recovery—a kind of tolling for which we have found no direct precedent. Section 6511's detail, its technical language, the iteration of the limitations in both procedural and substantive forms, and the explicit listing of exceptions, taken together, indicate to us that Congress did not intend courts to read other unmentioned, open-ended, 'equitable' exceptions into the statute that it wrote. There are no counterindications. Tax law, after all, is not normally characterized by case-specific exceptions reflecting individualized equities."
*Brockamp*, 519 U.S. at 350–52, 117 S.Ct. at 851–52.

1253, 1259 (D.Or.2002) (equitable tolling principles unavailable to extend time to file refund claims, since "[c]ourts consistently read *Brockamp* broadly to reject all equitable relief"). *See also Chaney v. United States*, 45 Fed. Cl. 309, 319, 84 A.F.T.R.2d 99–7137 (Fed.Cl.1999) (IRS not estopped from denying 1991 refund claim, as untimely, although taxpayer relied on erroneous advice of IRS Appeals Officer that claim would be timely, stating "[d]ue to the consistently strict application of the applicable statute of limitations in tax refund claims, plaintiffs are precluded from relying on equitable estoppel in order to extend the statute of limitations against the IRS"); *Video Training Source, Inc. v. United States*, 991 F.Supp. 1256, 1263 (D.Colo.1998) ("*Brockamp* proscribes all 'equitable' exceptions to the limitations periods of section 6511"); *Beydoun v. United States*, 969 F.Supp. 283, 285, fn. 5 (D.N.J. 1997) (*Brockamp* "pertains to all equitable exceptions, both estoppel and tolling").

38. Moreover, it is hornbook law that jurisdictional requirements, such as the time period for filing refund claims, cannot be waived, altered, or amended by an IRS employee. *Rosenbluth Trading, Inc. v. United States*, 736 F.2d 43, 47 (2d Cir.1984); *Allen v. United States*, 439 F.Supp. 463, 465 (C.D.Cal.1977) (notice disallowing taxpayer's refund claim as untimely did not waive government's limitations defense under section 6511(a), by stating that taxpayer had two years in which to bring suit, but "merely ... notif[ied] the Plaintiff of his right to contest the government's interpretation of the applicability of the statute of limitations"). *See also Angelus Milling Co. v. Commissioner*, 325 U.S. 293, 296, 65 S.Ct. 1162, 1164, 89 L.Ed. 1619 (1945) ("[i]nsofar as Congress has made explicit statutory requirements [such as filing refund claim within statutory period], they must be observed and are beyond the dispensing power of Treasury officials"); *Northern Life*

*Ins. Co.*, 685 F.2d at 279 (filing of timely tax refund claim is jurisdictional and cannot be waived); *Vishnevsky v. United States*, 581 F.2d 1249, 1252–53 (7th Cir. 1978)("when the applicable period of limitations has run and no refund claim whatsoever has been filed, there is no room to argue that the statutory requirement has been waived").

*In Any Event, the Facts of This Case Do Not Warrant Application of the Doctrine of Equitable Estoppel*

39. The Supreme Court never has decided whether estoppel may run against the Government, although its opinions have mentioned the possibility that some type of affirmative governmental conduct might give rise to estoppel. *Office of Personnel Management v. Richmond*, 496 U.S. 414, 110 S.Ct. 2465, 2469–72 & 2476, 110 L.Ed.2d 387 (1990) (relying upon the Appropriations Clause, the Court held that litigants may not use estoppel "as a basis for money claims against the Government"). It is well settled, however, that the Government may not be estopped on the same terms as other litigants. *Heckler v. Community Health Services*, 467 U.S. 51, 60, 104 S.Ct. 2218, 2224, 81 L.Ed.2d 42 (1984).

40. The Ninth Circuit has held that estoppel will be applied against the Government where "justice and fair play" so require. *Watkins v. United States Army*, 875 F.2d 699, 706 (9th Cir.1989). Nevertheless, estoppel must be applied with the utmost caution and restraint in tax cases so as not to impair the efficient collection of the public revenue. *Schuster v. Commissioner*, 312 F.2d 311, 317 (9th Cir.1962).

41. The traditional elements of equitable estoppel are that (1) the party to be estopped knows the facts, (2) he or she intends that his or her conduct will be

acted on or must so act that the party invoking estoppel has the right to believe it is so intended, (3) the party invoking estoppel must be ignorant of the true facts, and (4) he or she must detrimentally rely upon the other party's conduct. *United States v. Hemmen*, 51 F.3d 883, 892 (9th Cir.1995).

42. In addition to the four traditional elements of estoppel, a party seeking to estop the Government must establish "affirmative misconduct" that goes beyond mere negligence or neglect of duty. *Rider v. United States Postal Service*, 862 F.2d 239, 241 (9th Cir.1988). A simple misstatement similarly does not rise to the level of affirmative misconduct. *Id.*, at 241. Rather, the misrepresentation must be knowing or deliberate. *Lavin v. Marsh*, 644 F.2d 1378 (9th Cir.1981) (recruiters' erroneous, but innocent, misrepresentations that the plaintiff would be entitled to pension benefits if he joined Army Reserve was not affirmative misconduct).

43. "Affirmative misconduct" requires "an affirmative misrepresentation or affirmative concealment of a material fact." *Watkins*, 875 F.2d at 707. Furthermore, "estoppel will apply only where the Government's wrongful act will cause a serious injustice, and the public's interest will not suffer undue damage by imposition of the liability." *Id.* A party must satisfy these two threshold requirements before a court will even consider the traditional elements of estoppel. *Id.*

44. Courts within the Ninth Circuit consistently have **rejected** application of the doctrine of equitable estoppel against the IRS. *See United States v. Shaltry (In re Home America T.V.-Appliance Audio, Inc.)*, 232 F.3d 1046, 1052–53 (9th Cir. 2000) (equitable estoppel did not prevent IRS from asserting that trustee's exercise of avoidance powers was barred by statute of limitations, where IRS merely sent trus-

tee letter stating that her return had been "accepted as filed" and notice of disallowance stated that trustee had 2 years from date of mailing to file suit and trustee failed to show that actual reliance on those communications); *Hemmen*, 51 F.3d at 892 (although Service's failure to object to Chapter 7 trustee's notice of proposed distribution to debtor's president may have misled trustee into believing that IRS considered its levy issued some 18 months earlier to be defective, and that it would not seek to hold him personally liable for failure to honor levy, did not warrant application of equitable estoppel, since it "raises questions only as to what the Service failed to do"); *Simon v. United States*, 756 F.2d 696, 698 (9th Cir.1985) (IRS agent's failure to inform purchasers of property at county tax auction sale of requirement that written notice of impending sale be given to IRS not sufficiently affirmative act to outweigh duty of courts to observe conditions defined by Congress for charging public treasury, and thus, equitable estoppel did not prevent United States from asserting that notice of Federal tax lien remained attached to property); *In re Wright*, 244 B.R. 451, 457 (Bankr.N.D.Cal.2000)(Government not equitably estopped in tax dischargeability proceeding from contending that debtor-husband had not filed returns for tax years in question simply because IRS agents, who obtained possession of unsigned, unfiled returns that debtor had instructed his accountant to prepare, failed to advise debtors that their possession of returns in connection with criminal investigation did not satisfy debtor's obligation to actually "file" returns with IRS); *In re Howell*, 120 B.R. 137, 142 (9th Cir.BAP1990) (IRS employee's negligence in providing incorrect assessment date during telephone conversation with debtor did not constitute affirmative misconduct which would justify finding that IRS was equitably estopped

from denying that tax liability based on actual, later assessment date was nondischargeable in bankruptcy). *See also Joseph v. Internal Revenue Service*, 637 F.Supp. 1219, 1220 (D.Mass.1983) (alleged misrepresentation by unidentified IRS employee, informing taxpayer that she was not eligible to submit return, did not preclude Government from asserting defense to taxpayer's refund suit that withheld taxes in question were paid more than 3 years before refund claim, and that suit was time-barred); *Getchell v. Smith*, 1993 WL 268390, *3, 71 AFTR 2d 93–2025, 93–1 USTC ¶ 50,362 (D.Colo. May 5, 1993) (court rejected equitable estoppel claim made by taxpayer that he was misled by IRS employee, who did not inform him of statute of limitations contained in 26 U.S.C. § 6511(b)(2)(A), since "[s]uch an argument is not sufficient to overcome the statutory requirements for timely filing of refund claims"); *Kishnani v. United States*, 1993 WL 41777, *3, 71 AFTR 2d 93–1231, 93–1 USTC ¶ 50,115 (E.D.N.Y. Feb.12, 1993) (court rejected equitable estoppel claim of taxpayer who believed that there was no limitation of time to file refund claim, based upon IRS's alleged negligent monitoring of her non-filing of tax return for year and advice obtained from unidentified people, since "[g]eneral principles of equity, such as equitable tolling and estoppel, will not override statutory requirements for timely filing of tax refund claims," i.e., 26 U.S.C. § 6511(b)(2)(A)).

45. Plaintiff herein asserts that an unnamed IRS employee and an IRS employee named Ms. Aldrich allegedly informed him in May of 2000 and May of 2001, respectively, that he had 4 years to file a tax return claiming entitlement to the disputed credit. In no manner did those alleged statements amount to a "pervasive pattern of false promises" for which the Government can be estopped. *Lavin v. Marsh*, 644 F.2d at 1384.

46. Rather, the plaintiff assumed the risk that the IRS employees might provide misinformation. *Watkins*, 875 F.2d at 708. Like the plaintiff in *Lavin v. Marsh*, Danoff "chose trust over caution" and never attempted to confirm the IRS employees' alleged statements concerning the statute of limitations for filing a refund claim. *Id.*, at 1383.

47. Likewise, a party who asserts estoppel must not have been misled by his own lack of reasonable care. If he "conducts himself with careless indifference to the means of information reasonably at hand or ignores highly suspicious circumstances, he may not invoke the doctrine of estoppel." *Brown v. Richardson*, 395 F.Supp. 185 (W.D.Pa.1975).

48. Plaintiff herein is an experienced attorney who easily could have determined the applicable statute of limitations for filing a refund claim simply by consulting the Internal Revenue Code. Plaintiff, however, chose to blindly rely upon those employees' alleged statements regarding the statute of limitations.

49. Moreover, the alleged statements of the IRS employees would appear to concern a *question of law*, as to which the doctrine of equitable estoppel is inapplicable. *See Automobile Club of Michigan v. Commissioner*, 353 U.S. 180, 77 S.Ct. 707, 1 L.Ed.2d 746 (1957); *Puls v. United States*, 387 F.Supp. 760, 764 (N.D.Cal. 1974).

50. For all of the foregoing reasons, the Court hereby grants defendant's Motion. Accordingly, the Court hereby dismisses plaintiff's Complaint and action for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted, pursuant to Rules 12(b)(1) and (b)(6) of the Federal Rules of Civil Procedure.

51. Plaintiff shall take nothing by way of his Complaint filed in this action, and Judgment shall be entered against plaintiff and in favor of defendant.

52. Any finding of fact deemed more appropriately to be a conclusion of law is incorporated herein as a conclusion of law.

**IT IS SO ORDERED.**

### JUDGMENT

The Motion to Dismiss Complaint, or Alternatively, for Summary Judgment filed by defendant, the United States of America, came on for hearing before the Court, the Honorable James V. Selna, United States District Judge, presiding, at the date, time, and place shown above. Based upon the Statement of Uncontroverted Facts and Conclusions of Law filed herein, and good cause appearing therefor,

**IT IS ORDERED, ADJUDGED AND DECREED** that:

1. Judgment is hereby entered in favor of defendant and against plaintiff on the merits of plaintiff's Complaint filed in this action.

2. Accordingly, plaintiff shall take nothing by way of his Complaint filed in this action.

IT IS SO ORDERED.